THOS. J. HARDING, Adm'r, v. THE HEIRS AND CRED-
ITORS OF JOHN WATERS, deceased.

1. PLEADINGS AND PRACTICE. *Non est factum.* *Bills and notes.* *Special plea by endorser.* *Burden.* If a special undertaking be written upon a note above the signature of the endorser, without his authority, he must raise the question by a special plea of *non est factum*, and the burden is upon him to show it was without his authority.

2. EVIDENCE. *Liability.* *Indemnity.* If an endorser accept indemnity from his principal, after a knowledge of the supposed facts which discharge him, it is persuasive evidence of his liability.

3. BILLS AND NOTES. *Irregular endorsement.* *Liability of endorser.* If a note, payable to a particular person or order, is first endorsed by a third person, the party so endorsing is liable as a guarantor, and it is competent for the payee to write the guaranty above the name of the endorser.

FROM OVERTON.

Appeal from the Chancery Court at Nashville. W.
F. COOPER, Ch.

EAST & FOGG for complainant.

DEMOSS & MALONE for defendants.

E. H. EWING, Sp. J., delivered the opinion of the court.

On the 14th of February, 1862, John Waters and Alex'r Fall executed their joint note to Mrs. Eliza P. Wilson, at twelve months, for $5,000, with interest from date. On the back of this note Robert Lusk writes his name. Above the name of Lusk, when the note first appears in court, was written, "I guarantee the within to Eliza P. Wilson." Mrs. Wilson's

Harding *v.* Heirs and Creditors of Waters.

name is not endorsed upon the note. Waters was a non-resident, and not having paid the note at maturity, and being in embarrassed circumstances, at the instance of Fall (who seems to have been the surety only of Waters) Mrs. Wilson's executors (she having died in the meantime), on the 31st of March, 1866, filed their bill in the chancery court at Nashville to attach certain real property of Waters' situate there. The attachment was levied, and, upon a *pro confesso,* the property ordered to be sold. At a subsequent term of the court, Waters appeared and asked, under the statute, to be allowed to put in his answer and have the case re-examined. This was refused by the court, and thereupon Waters appealed to this court, and Lusk became his surety on appeal, Mrs. Wilson's debt then amounting to between six and seven thousand dollars. Pending this appeal Waters died, and his estate being insolvent, his administrator, Thomas J. Harding, filed his bill in the chancery court at Nashville to have the estate administered in that court as an insolvent one. The executors of Mrs. Wilson soon thereafter dismissed their case in the supreme court, and filed their claim as creditors under the insolvent bill. This last bill was filed on the 15th of September, 1868. On the 5th of June, 1871, Robert Lusk, conjointly with Harding the administrator of Waters, filed a petition in said insolvent cause, setting out that when Waters appealed and Lusk became his surety in appeal, Waters had placed in Lusk's hands $5,000 to indemnify him *against any liability on said note* or by reason of said suretyship, which sum had increased by

interest, to the date of the petition, to the sum of $6,110, and he prays to be allowed to pay this sum into court, to be disposed of as the court shall think proper. In this petition Lusk denied that he was liable on the note, and stated that he had put his name upon it only as an ordinary endorser, and that he had no notice of dishonor, etc.; and, as a fact he had not had any such notice, and if he was to. be regarded as an ordinary endorser, was discharged. Lusk having thus made himself a party under the insolvent bill, two or three years thereafter died, and the case was by consent revived against Mrs. Lusk, his executrix,—the money, viz., the $6,110, having been paid into the cause, where it now is. The executors of Wilson meantime set up their claim to said money, and sought also, so far as they might, to hold said Lusk liable personally upon his undertaking upon said note of $5,000. By consent of parties, a decree was entered in said insolvent cause, referring to a special commissioner the question of Lusk's liability, and the question of the right of Wilson's executors to assert a lien upon said fund, and the question as to what had been already paid from any other source to said executors. The clerk and master thereafter made his report, exonerating said Lusk from Liability on said note, also from liability as surety in Waters' appeal, and stating that the executors of Wilson had received from Fall's estate (he having in the meantime died insolvent) a dividend of about $3,000. To this report the executors of Wilson excepted, their exception was overruled, and the chancellor proceeded to

decree that the general creditors of Waters were entitled to the fund in the court paid in by Lusk. This fund, as appears by the report, is more than sufficient to pay the balance of the Wilson debt.

The executors of Wilson claim this as a trust fund placed in Lusk's hands for the payment of their debt, or, at least, that they are entitled to it by subrogation to Lusk's rights in case he was personally liable on the note.

This question of Lusk's personal liability is the one this court has now to determine, the case having been brought here by appeal of Wilson's executors from the final decree above mentioned.

What was the effect of Lusk's writing on the back of the note, it being admitted that he did write his name there at its date? Were the words, "I guarantee the within to Eliza P. Wilson," on the note when he signed his name? The presumption is that they were; and, upon a special plea of *non est factum*, which would have been necessary in such case, the burden of proof would be on him to show that they were not: *Griscom* v. *Fite*, 1 Head, 331; *Waldron* v. *Young*, 9 Heis., 777. He off rs no affirmative proof in his lifetime, the statement in his petition being no proof, and at the most, only making an issue; and after his death, upon the reference to the clerk and master, the only proof is that of two photographic experts, who, applying their microscopes, express the opinion that the words of guarantee were in a different ink from the name, and that the writing overlapped the name, and so must have been written

after it; no opinion is expressed as to how long after it. The original paper is sent up with the record. Against this, for the executors, it is argued that even if it was written afterwards, and by another hand and in different ink, this might all have been in Lusk's presence, or by Fall or Waters before the note was delivered to Mrs. Wilson, and such a writing would not have been inconsistent with Lusk's signature, the note not being then, nor in fact at any time, endorsed by Mrs. Wilson; that, long after Lusk had been discharged as an ordinary endorser, he took from Waters $5,000 as an indemnity against liability on this note and on his suretyship for Waters in his appeal to the supreme court. If he was not liable on the note and if he did not know himself to be so, would he have entered into this new obligation upon the deposit of $5,000, when the appeal was from a debt then $1,500 larger? The taking of this indemnity by Lusk after he knew that he was discharged as an ordinary endorser, though not sufficient of itself to establish a new promise upon his part, would, upon an issue of that description, be strong persuasive evidence against him. It would be much stronger on a special plea of *non est factum* in the case now before the court. The case is to be looked at as if Lusk had put in such a plea (the utmost he could have done), as the reference to the clerk and master by consent was equivalent to opening the door to all legal pleading and proof that might be offered by either party. Upon such a plea in effect, then, this court is of opinion that Lusk's executrix has failed to make out

her defense, and this is decisive of the case as to her deceased husband's liability.

But, as this conclusion is one arrived at upon a bare preponderance of testimony, it may be more satisfactory to place our decision also upon another ground.

We find the facts and circumstances of this case, so far as Lusk's liability is concerned, to be, that Waters and Fall, or Waters alone, being desirous to borrow the sum of $5,000, the two drew the note under discussion, payable to Mrs. Wilson, and the same not having been endorsed by Mrs. Wilson, Lusk, at the least, wrote his name on the back thereof, and either handed the paper to Mrs. Wilson or to Fall or Waters, who handed it to her, and that she thereupon delivered the money to them, or one of them. The note is not payable in a bank, nor was it made for discount.

Did this authorize the writing of a formal guarantee above Lusk's signature?

This question is by no means one of the first impression in this State. Many decisions have been made upon it and analogous questions by this court. In other States, and in the Supreme Court of the United States, much has been written and decided bearing upon it.

Our first case was that of *Comparee* v. *Brockway,* 11 Hum., 355, decided by this court (McKinney, J.) in 1850. This decision has been followed, has been criticised, has been evaded, and finally, as it seems to us, has had its force broken effectually by the decision in the case of *Rivers* v. *Thomas,* 1 Lea, 649.

For Judge McKinney's legal acumen and general ability, no one has a higher estimate than the writer of this opinion.    An endorsement upon a paper, made by one who is not its payee, before or without the endorsement of the payee, he holds to create only the obligation of an ordinary endorser, unless there is an express agreement with him that he is to be held otherwise; a different liability, he says, could not be implied from the facts and circumstances surrounding the transaction.    With this holding dissatisfaction was soon manifested at the bar, and attempts were soon made to evade its force.    The decision would seem to have had its origin in a failure to take the distinction between notes made to be discounted, or sold to raise money upon, and notes given to a payee for the loan of money or for property purchased from him.    When it once appeared that the paper was of the latter description, it became impossible that any force could be given to the endorsement as an ordinary one.    The payee would, in such a case, be first endorser, and of course liable to the second, who would be liable to nobody.    To avoid this difficulty, Judge McKinney suggested that the payee might make a restricted endorsement, and thus give one to whom the note might be sold, a right against the second endorser.    But would not this be bad faith on the payee's part toward the second endorser, and enable him, in case he had to pay the money to a *bona fide* holder, to treat the first endorser as one who had made no restriction.    Otherwise, he who having signed his name intending only to become second endorser,

could be made first endorser at the will of the payee. Besides, it would not be easy to find a market for a note thus endorsed, and it would be difficult for one buying such a note to make himself out a *bona fide* holder. So that, in the case of money loaned by a payee, the endorsement of a third party, though intended to mean something to the payee, would in fact mean nothing.

The case of *Clowston* v. *Barbiere*, 4 Sneed, 335, decided in 1857, by Judge Caruthers, merely follows the case of *Comparee* v. *Brockway*, and reiterates the doctrine that the agreement must be express that is to vary the liability of an endorser from that which regularly attaches to him. In the case of *Newell* v. *Williams*, 5 Sneed, Judge McKinney says the proof of an intent to assume a larger liability than that of an ordinary endorser, must be full and satisfactory. And in *Brinkley* v. *Boyd*, 9 Heis., 150, Judge Sneed says that parol proof, at law, for such a purpose is inadmissible. This series of decisions is in conflict with the course of decisions of most of the States of the Union, a great number of which are collected in the case of *Rivers* v. *Thomas*, decided by Judge Cooper and reported in 1 Lea, 649. They are in conflict with the course of decisions in the Supreme Court of the United States (*Ray* v. *Simpson*, 22 Howard, 341), and, with the utmost deference for the distinguished gentleman who made them, were contrary to principle. Why, when it was once admitted that parol proof might be made with a view to show the true intent with which an irregular endorsement was made, should

that proof be confined to an express agreement? Why should not facts and circumstances, sometimes as strong to show intent as an express declaration, be admitted? All of the three cases preceding that of *Brinkley* v. *Boyd* concede that parol proof might be made. Since the cases above mentioned of our court, several other decisions of the same court have been made bearing upon the question. The opinions in these cases, looking to the maxim *stare decisis,* have dealt tenderly with the previous course of decision, and endeavored as far as possible to reconcile themselves with them. This was consistent with sound philosophy in the progress of the law. In the case of *Iser* v. *Cohen,* 1 Baxt., 421, decided by Judge Deaderick in 1872, was a small advance upon the previous decisions, holding an irregular endorser liable upon proof of facts and circumstances, short of any express agreement. In 1878, Judge Cooper, in the case of *Rivers* v. *Thomas,* 1 Lea, 649, gave the opinion of the court, and although the facts there were not precisely similar to those in the case now before us, yet they involved the discussion of precisely the same principles. With every disposition on the part of the court to preserve rather than to destroy the previous decisions, beginning with *Comparee* v. *Brockway* and ending with *Brinkley* v. *Boyd,* and to reconcile them with the decisions then being made, it is manifest that in their most important feature they have been overruled. The principle established in this last case is, that all of the facts and circumstances accompanying one of these irregular endorsements may be looked at to arrive at

the true intent of the party in making it. In the case now before the court, was the note made to borrow money of the payee, and not to be discounted or sold? Did Lusk know this fact? Did he endorse it for the accommodation of Waters, or Waters and Fall, and to enable them to get the money from Mrs. Wilson? Did he believe that she was to endorse the paper before him, and thus become liable to him in case she should desire to raise money upon it by getting it discounted? Knowing that the payee was to lend the money, did he intend to do an act which would have no effect? Would not the answers to all of these questions be such as to prove almost inevitably that he intended to be bound in some way to Mrs. Wilson to secure her loan? If so, it is unfair to hold him bound in the way least injurious to him consistently with his being bound at all, that is, as guarantor. As endorser, we have seen he could not be bound to her, and perhaps not to any other holder.

Under the facts and circumstances of this case, we are of opinion that Lusk was liable on his endorsement as guarantor, and that the decision of the chancellor was erroneous and should be reversed, and the fund placed in Lusk's hands, and now in this court or the court of chancery, should be applied to the payment of Mrs. Wilson's debt.

We are of opinion that Judge Clifford, in the case of *Rey* v. *Simpson*, 22 Howard, 341, has laid down a safe and true rule in regard to such irregular endorsements as the present. He says: "When a prom-

issory note, made payable to a particular person or order as in this case, is first endorsed by a third person, such person is held to be an original promisor, guarantor, or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. If he put his name on the back of the note at the time it was made, as surety for the maker, and for his accommodation to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered as a joint maker of the note. On the other hand, if his endorsement was subsequent to the making of the note, and he put his name there at the request of the maker, pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as a guarantor; but if the note was intended for discount, and he put his name on the back of it with the understanding of all parties that his endorsement would be inoperative until it was endorsed by the payee, he would then be liable only as a second endorser, in the commercial sense, and as such, would clearly be entitled to the privileges which belong to such endorsers." Our only dissent from this rule is, that we should regard the endorser in both of the two first cases supposed, as a guarantor. The contract of guarantee can be implied from facts and circumstances attending the making of the irregular endorsement, and an express undertaking is not necessary to make such case.

It is well, perhaps, if this opinion should be re-

garded as taking a considerable step in advance in the commercial law, as heretofore understood under our decisions, that it does not operate personally upon the party charged with the collateral liability, but only on a fund placed in his hands by the principal debtor, and also that we have held him liable on another and distinct ground.

The decree of the chancellor must be reversed with costs, and the cause remanded for further proceedings in the chancery court at Nashville.